❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Electronic devices, currently located at 345 W. Saint<br>Paul Avenue, Milwaukee, Wisconsin, more fully<br>described in Attachment A | )<br>)<br>)<br>)<br>)<br>) |

Case No. 24-858M(NJ)

**Matter No.: 2024R00073**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 6/19/2024_____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.      xx❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Nancy Joseph_____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____.

Date and time issued: 6/5/2024 @ 8:53 a.m._____

*Judge's signature*

City and state:   Milwaukee, Wisconsin_____      Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.      The property to be searched is described as follows:

   a.   A green Apple iPhone smartphone with an Apple logo on the back, in a black Otterbox case, hereinafter referred to as "**Device A;**"

   b.   A purple Apple iPhone smartphone with an Apple logo on the back, in a black Otterbox case, hereinafter referred to as "**Device B;**"

**Devices A** and **B**, collectively the "**Devices,**" are currently located at 345 W. Saint Paul Avenue, Milwaukee, Wisconsin.  This warrant authorizes the forensic examination of the **Devices** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the **Devices** described in Attachment A that relate to violations of 21 U.S.C. §§ 846, 843(b), and 841(a)(1), and involve Damian DEL VALLE-RIVERA, including, but not limited to:

    a.  any documents and communication related to the Subject Offenses;

    b.  lists of contacts and related identifying information;

    c.  any information related to criminal activity and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

    d.  any information recording schedule or travel;

    e.  all bank records, checks, credit card bills, account information, and other financial records;

    f.  Photographs and/or videos depicting evidence of the crime;

    g.  Any evidence related to either the ownership, purchase, or possession of items used in the Subject Offenses;

    h.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses

2.      Evidence of user attribution showing who used or owned the **Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted

1

by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the USPIS may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Electronic devices, currently located at 345 W. Saint<br>Paul Avenue, Milwaukee, Wisconsin, more fully<br>described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.24-858M(NJ)<br>**Matter No.: 2024R00073** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1)<br>21 U.S.C. § 843(b)<br>21 U.S.C. § 846 | Distribution of a controlled substance; use of a communications facility to facilitate the distribution of a controlled substance; and conspiracy to distribute a controlled substance. |

The application is based on these facts:

See attached Affidavit

❑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Tyler Fink* <span style="float:right">Digitally signed by Tyler Fink<br>Date: 2024.06.04 13:04:08 -05'00'</span>

*Applicant's signature*

Tyler Fink, USPIS Inspector

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means)*.

Date:6/5/2024 @ 8:55 a.m.

*Judge's signature*

City and state: Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR SEARCH WARRANT
### Matter No.: 2024R00073

I, Tyler Fink, being first duly sworn on oath, on information and belief state:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.  I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have been employed as a full-time law enforcement officer since June 2014.

3.  The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, Section 3061 with the enforcement of laws governing the use and movement of the United States Mail, including, but not limited to, the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, identity theft, and narcotics trafficking involving the U.S. Mail.

4.  I am currently assigned to the USPIS Milwaukee Office, Multi-function team, as well as being placed on the High Intensity Drug Trafficking Area ("HIDTA") Interdiction Task Force. The USPIS Milwaukee Office investigates USPS customers involving narcotics, prohibited mailings, controlled substances, prescription medications, and other matters related to the Postal Service. I have intercepted numerous parcels, which were found to contain narcotics, prescription medications, or proceeds of narcotics trafficking and other evidence of criminal activity.

5.  In June 2014, I completed the Peace Officer Standards and Training certification at the St. Louis County and Municipal Police Academy while employed as a City of Creve Coeur

1

Police Officer. While working as a Police Officer, I received extensive training in narcotics investigations. In 2017, I graduated from the United States Postal Inspection Service ("USPIS") Basic Inspector Training program. I received advanced training by the USPIS in the investigation of controlled substances or proceeds/payments being transported through the United States.

6. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1), 843(b), and 846 (possession with intent to distribute a controlled substance, unlawful use of a communication facility (including the mails) to facilitate the distribution of a controlled substance, and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have participated in numerous complex drug-trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

    a. I have used informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

    b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

    c. I have participated in several search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

    d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base, ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

    e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

2

f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other storage locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials;

i. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

j. I know large-scale drug traffickers maintain on-hand large amounts of U.S. currency to maintain and finance their ongoing drug business;

k. I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), computers, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

l. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency;

m. I know it is common for persons involved in large-scale drug trafficking to maintain evidence pertaining to their obtaining, secreting, transferring, concealing, and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages), businesses, or other locations over which they maintain dominion and control;

3

n.  I know large-scale drug traffickers often use electronic equipment such as telephones (landlines and cell phones), computers, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

o.  I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency;

p.  I know drug traffickers commonly maintain addresses or telephone numbers in books or papers that reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization; and

q.  I know drug traffickers take (or cause to be taken) and maintain photographs of themselves, their associates, their property, and their drugs.

7.    I have been the affiant on over 90 warrants in federal court. Based on my training, personal experience, on the job training, and working with other USPIS Postal Inspectors and HIDTA drug task force officers, I know narcotics, drugs, paraphernalia, controlled substances, prescription medications, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through the USPS system, and I am familiar with many of the methods used by individuals who attempt to use the USPS to illegally distribute controlled substances.

8.    I have participated in several narcotics and firearms trafficking investigations that involved the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other digital storage devices. On many occasions, this electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

4

9.      Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software that are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

10.     This affidavit is based upon my personal knowledge, training, and experience, and on information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  This affidavit is also based upon official records, witness statements, recorded statements, surveillance video, and public records, which I consider to be reliable as set forth herein.

11.     Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

12.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (Distribution and Possession with Intent to Distribute a Controlled Substance), 843(b) (Unlawful Use of a Communication Facility [including the mails] to Facilitate the Distribution of a Controlled Substance), and 846 (Conspiracy to Distribute and Possession with the Intent to Distribute Controlled Substances) have been committed, are being committed, and/or will be committed by Damian Joel DEL VALLE-RIVERA ("DEL VALLE-RIVERA") (DOB: XX/XX/2000).

5

13.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

14.     The property to be searched is described as follows:

a.     A green Apple iPhone smartphone with an Apple logo on the back, in a black Otterbox case, hereinafter referred to as "**Device A;**"

b.     A purple Apple iPhone smartphone with an Apple logo on the back, in a black Otterbox case, hereinafter referred to as "**Device B;**"

15.     **Devices A** and **B**, collectively the "**Devices**," are currently located at 345 W. Saint Paul Avenue, Milwaukee, Wisconsin.

16.     The applied-for warrant would authorize the forensic examination of the **Devices** for the purpose of identifying electronically stored data more particularly described in Attachment B.

## BACKGROUND

17.     On April 16, 2024, a grand jury in this district returned a three-count indictment charging Damian Joel DEL VALLE-RIVERA (the defendant), with conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count One), in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); and distribution and possession with intent to distribute 500 grams or more of cocaine (Counts Two and Three), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). In sum, the evidence reflects that the defendant conspired with others to possess with intent to distribute at least five kilograms of cocaine, triggering a ten-year mandatory

6

minimum term of imprisonment and up to a life term of imprisonment; and that the defendant, on two distinct occasions, distributed and possessed with intent to distribute at least 500 grams of cocaine, triggering a five-year mandatory minimum term of imprisonment and up to a forty-year term of imprisonment.

## PROBABLE CAUSE

<u>Two suspicious parcels mailed from Puerto Rico to same Milwaukee residence</u>

18.     On November 27, 2023, upon reviewing U.S. Postal Service (USPS) records, I identified two suspicious parcels sent from Puerto Rico to Milwaukee, Wisconsin.  PARCEL 1 was 7 lbs., 10 oz. and was postmarked on November 24, 2023 in San Juan, Puerto Rico at 10:31 a.m. The handwritten shipping label indicated it was from "Jose Ortiz 19 Calle Ramon Rivera Cruz Urb. San Pedro Toa Baja, PR 00949" and addressed to "Maria Ortiz 3210A S 12th St. Milwaukee WI 53215-4608." I obtained an image of a bearded male in a blue shirt mailing a parcel at the Bayamon Post Office at the same time indicated on the postmark for PARCEL 1.  As detailed *infra*, I later determined that the bearded male was Damian Joel DEL VALLE-RIVERA. Surveillance footage showed DEL VALLE-RIVERA departing the post office in a white 2019 Acura MDX bearing Puerto Rican plates numbered JJO 514.  According to Puerto Rico vehicle registration records, the Acura's registered owner was DEL VALLE-RIVERA.  PARCEL 1 was delivered to the Milwaukee address on November 28, 2023.  The Consolidated Lead Evaluation and Reporting (CLEAR) database indicated no one named "Jose Ortiz" resided at the sender's address while no one named "Maria Ortiz" resided at the recipient's address.  As detailed *infra*, investigators were later able to recover an image of PARCEL 1, an image of the USPS mailing receipt for PARCEL 1, and a screenshot of the online USPS tracking for PARCEL 1 from an iCloud account associated with DEL VALLE-RIVERA.

Case 2:24-mj-00858-NJ     Filed 06/05/24     Page 13 of 37     Document 1

19.     PARCEL 2 was 7 lbs., 3 oz. and was postmarked on November 24, 2023 in Bayamon, Puerto Rico at 11:39 a.m.  The sender and recipient names and addresses handwritten on PARCEL 2 were the same as those handwritten on PARCEL 1. I obtained an image of DEL VALLE-RIVERA mailing a parcel at the Bayamon Post Office at the same time indicated on the postmark for PARCEL 2. The San Juan and Bayamon post offices are not far from one another (i.e., about a 15-minute drive), which explains how DEL VALLE-RIVERA was able to mail both PARCELS 1 and 2 close in time to one another.  As detailed *infra*, investigators were later able to recover an image of PARCEL 2, an image of the USPS mailing receipt for PARCEL 2, and a screenshot of the online USPS tracking for PARCEL 2 from an iCloud account associated with DEL VALLE-RIVERA.

20.     On November 29, 2023, USPIS Task Force Officer (TFO) Chris Conway and Milwaukee Police Department (MPD) Officer Chris Navarrette conducted surveillance at 3210A S. 12th St., Milwaukee, Wisconsin during delivery of PARCEL 2 at the residence.  About 30 minutes after the mail carrier delivered PARCEL 2, the officers observed Patricia Nolasco-Brito[1] emerge from the residence, retrieve PARCEL 2, and return inside the residence with the parcel. USPS records indicated that "Joseph Del Valle, josephdelvalle@hotmail.com, 787-955-8481," had a USPS customer account affiliated with 3210A S. 12th St., Milwaukee, Wisconsin.

---

[1] USPS records indicated that previous mailings delivered to 3210A S. 12th St., Milwaukee, Wisconsin were addressed to "Patricia Nolasco."  When comparing Patricia Nolasco-Brito's Wisconsin driver's license photograph to the appearance of the woman who retrieved PARCEL 2, the officers concluded Nolasco-Brito was the woman who retrieved PARCEL 2.

<u>Two linked parcels mailed from same Puerto Rico post office;</u>
<u>one parcel confirmed to contain cocaine</u>

21.     On November 30, 2023, I was reviewing USPS records and identified a suspicious parcel sent to Milwaukee, Wisconsin from Puerto Rico.   PARCEL 3 was 6 lbs., 15 oz. and postmarked on November 27, 2023 in Toa Alta, Puerto Rico at 9:14 a.m.  The handwritten shipping label indicated it was from "Jose Ortiz 20 Calle Ramon Rivera Cruz Urb. San Pedro Toa Baja, PR 00949" (a slight variation on the sender's address listed on PARCEL's 1 and 2) and addressed to "Maria Ortiz 3210A S 12th St. Milwaukee WI 53215-4608" (the same recipient's name and address listed on PARCELS 1 and 2).  On November 30, 2023, I conducted surveillance at 3210A S. 12th St., Milwaukee, Wisconsin as PARCEL 3 was delivered to the residence.   About 35 minutes after the mail carrier delivered PARCEL 3, I observed Nolasco-Brito emerge from the residence, retrieve PARCEL 3, and return inside the residence with the parcel.  As detailed *infra*, investigators were later able to recover an image of PARCEL 3, and a screenshot of the online USPS tracking for PARCEL 3 from an iCloud account associated with DEL VALLE-RIVERA.

22.     Also on November 30, 2023, I identified another suspicious parcel sent at the same time as PARCEL 3 from Toa Alta, Puerto Rico.  PARCEL 4 was 5 lbs. and postmarked on November 27, 2023 in Toa Alta, Puerto Rico at 9:14 am.  The shipping label indicated it was from the same person who sent PARCEL 3.  PARCEL 4, however, was addressed to "Maria Ortiz 1705 Crestview Dr. Bakersfield, CA 93305."  I obtained an image of DEL VALLE-RIVERA mailing two parcels at the Toa Alta Post Office at approximately the same time indicated on the postmarks for PARCELS 3 and 4. I contacted a Postal Inspector in Bakersfield, California, who obtained a warrant to search the contents of PARCEL 4.  Upon executing the warrant, the Postal Inspector found a kilogram brick of a substance that field-tested positive for cocaine.  The cocaine brick was wrapped in blankets, carbon paper, and tape, and bore a stamp of a bipedal-type figure. As detailed

9

*infra*, investigators were later able to recover from an iCloud account associated with DEL VALLE-RIVERA a screenshot of the online USPS tracking for PARCEL 4, and an image of a cocaine brick bearing the same stamp as that depicted on the PARCEL 4 cocaine brick.

<u>Three suspicious parcels mailed from Puerto Rico to Milwaukee on same day</u>

23.    On December 6, 2023, while conducting routine parcel screenings at the Milwaukee Processing and Distribution Center, I identified three suspicious parcels sent from Puerto Rico to Milwaukee, Wisconsin.  PARCEL 5 was 8 lbs., 4 oz. and postmarked on December 5, 2023 in Dorado, Puerto Rico at 9:37 a.m.  The handwritten shipping label indicated it was from "Maria Ortiz 18 Calle Ramon Rivera Cruz Urb San Pedro Toa Baja, PR 00949" (a slight variation on the sender's address listed on PARCEL's 1 through 4) and addressed to "Damian Del Valle 1033 S 76th St Milwaukee, WI 53214." The CLEAR database indicated no one named "Maria Ortiz" (the name used to identify the recipient of the previous parcels) resided at the sender's address while no one named "Damian Del Valle" resided at the recipient's address. I obtained an image of a female mailing a parcel at the Dorado Post Office at approximately the same time indicated on the postmark for PARCEL 5.  The female arrived at (and departed from) the post office as the passenger in the same white Acura MDX captured on the November 24, 2023 surveillance footage from the San Juan Post Office.  PARCEL 5 was delivered to the Milwaukee address on December 6, 2023.  As detailed *infra*, investigators were later able to recover an image of PARCEL 5's shipping label, and an image of the USPS mailing receipt for PARCEL 5 from an iCloud account associated with DEL VALLE-RIVERA.

24.    PARCEL 6 was 7 lbs., 13 oz. and postmarked on December 5, 2023 in Sabana Seca, Puerto Rico at 10:03 a.m.  The sender and recipient names and addresses handwritten on PARCEL 6 were the same as those handwritten on PARCEL 5.  I obtained images of the same female mailing

10

a parcel at the Sabana Seca Post Office at approximately the same time indicated on the postmark for PARCEL 6. Surveillance footage revealed that the female was dropped off at the Sabana Seca Post Office by the same white Acura MDX previously captured in footage from the Dorado Post Office. PARCEL 5 was delivered to the Milwaukee address on December 6, 2023. As detailed *infra*, investigators were later able to recover an image of the USPS mailing receipt for PARCEL 6 from an iCloud account associated with DEL VALLE-RIVERA.

25. On December 6, 2023, I conducted surveillance at 1033 S. 76th St. Milwaukee, Wisconsin as PARCELS 6 and 7 were delivered to the residence. About 35 minutes after the mail carrier delivered PARCELS 6 and 7, I observed Laura Bobonagua-Brito[2] emerge from the residence. Although my view was obstructed, I noted that the parcels were gone when I drove past the residence at the end of my surveillance (suggesting Bobonagua-Brito had retrieved the parcels).

26. PARCEL 7 was 6 lbs., 15 oz. and postmarked on December 5, 2023 in Sabana Seca, Puerto Rico at 11:03 a.m. The handwritten shipping label indicated it was from "Damian Del Valle 18 Calle Ramon Rivera Cruz Urb San Pedro Toa Baja, PR 00949" and addressed to "Joseph Del Valle 3210 S 12th St Milwaukee, WI 53215-4608." The CLEAR database indicated no one named "Damian Del Valle" resided at the sender's address. Wisconsin Department of Transportation (DOT) records, however, indicated a person named Joseph Del Valle-Martinez resided at 3210A S. 12th Street, Milwaukee, Wisconsin 53215. I obtained an image of DEL VALLE-RIVERA mailing a parcel at the Sabana Seca Post Office at approximately the same time indicated on the postmark for PARCEL 7. On this occasion, surveillance footage captured DEL

---

[2] USPS records indicated that previous mailings delivered to 1033 S. 76th St. Milwaukee, Wisconsin were addressed to "Laura Bobonagua." When comparing Laura Bobonagua-Brito's Wisconsin driver's license photograph to the appearance of the woman who retrieved PARCELS 5 and 6, USPI Fink concluded Bobonagua-Brito was the woman who retrieved PARCELS 5 and 6.

11

VALLE-RIVERA arriving at and departing from the post office in the white Acura MDX as well. PARCEL 7 was delivered to the Milwaukee address on December 6, 2023. As detailed *infra*, investigators were later able to recover an image of the USPS mailing receipt for PARCEL 7 from an iCloud account associated with DEL VALLE-RIVERA.

<u>Two linked parcels mailed to Milwaukee; each containing a kilogram of cocaine</u>

27.    On January 11, 2024, while reviewing USPS records, I identified a suspicious parcel sent from Puerto Rico to Milwaukee, Wisconsin. PARCEL 8 was 6 lbs., 2 oz. and postmarked on January 10, 2024 in Toa Baja, Puerto Rico at 11:36 a.m. The handwritten shipping label indicated it was from "Vanessa Ortiz 20 Calle Ramon Rivera Cruz Urb. San Pedro Toa Baja, PR 00949" (the same address listed on PARCEL 3) and addressed to "Maria Ortiz 3210A S 12th St, Milwaukee, WI 53215-4608" (the same recipient's name and address listed on PARCELS 1, 2 and 3). The CLEAR database indicated no one named "Vanessa Ortiz" resided at the sender's address while no one named "Maria Ortiz" resided at the recipient's address. I obtained an image of a female mailing a parcel at the Toa Baja Post Office at approximately the same time indicated on the postmark for PARCEL 8. I later determined, based on a comparison with an image of a photographic ID recovered from the iCloud account associated with DEL VALLE-RIVERA, that the female was Darangelys Cruz-Ortiz, who appears to be DEL VALLE-RIVERA's romantic partner.

28.    On January 17, 2024, I located PARCEL 8 at the West Milwaukee Post Office. After a narcotics-detecting canine alerted to PARCEL 8, I obtained a warrant to search its contents. Upon executing the warrant, I found a kilogram-brick of a substance that field-tested positive for cocaine. The cocaine brick was wrapped in bed sheets, carbon paper, and tape, and bore a stamp

12

that read "100%" over five five-point stars. As detailed *infra*, an image of a cocaine brick bearing the same stamp was recovered from the iCloud account associated with DEL VALLE-RIVERA.

29.     On January 12, 2024, while reviewing USPS records, I identified a suspicious parcel sent from Puerto Rico to Milwaukee, Wisconsin. PARCEL 9 was 7 lbs., 9 oz. and was postmarked on January 11, 2024 in Dorado, Puerto Rico at 11:47 a.m. The handwritten shipping label indicated it was from "Kevin Ortiz 19 Calle Ramon Rivera Cruz Urb. San Pedro Toa Baja, PR 00949" (the same address listed on PARCEL 1) and addressed to "Maria Ortiz 3210A S 12th St, Milwaukee, WI 53215-4608" (the same recipient's name and address listed on PARCELS 1, 2, 3 and 8). The CLEAR database indicated no one named "Kevin Ortiz" resided at the sender's address while no one named "Maria Ortiz" resided at the recipient's address. I obtained an image of DEL VALLE-RIVERA (also believed to have mailed PARCELS 1, 2, 4 and 7) mailing a parcel at the Dorado Post Office at approximately the same time indicated on the postmark for PARCEL 9. Surveillance video also revealed DEL VALLE-RIVERA arriving at the Dorado Post Office in a white Mitsubishi Outlander with tinted windows. DEL VALLE-RIVERA is the registered owner of a white 2008 Mitsubishi Outlander LS bearing Puerto Rican plates numbered HGJ 323. As detailed *infra*, investigators were later able to recover an image of the USPS mailing receipt for PARCEL 9, and a screenshot of the online USPS tracking for PARCEL 9 from an iCloud account associated with DEL VALLE-RIVERA.

30.     On January 13, 2024, I located PARCEL 9 at the Milwaukee Processing and Distribution Center. After a narcotics-detecting canine alerted to PARCEL 9, I obtained a warrant to search its contents. Upon executing the warrant, I found a kilogram-brick of a substance that field-tested positive for cocaine. The cocaine brick was wrapped in bed sheets, carbon paper, and tape, and bore a stamp that read "48 SUTAN." USPS records revealed that on January 13, 2024,

13

an unidentified individual inquired about the delivery status of PARCEL 9 and requested that updates be sent to the following email addresses: elbozz14@icloud.com and monratecepeda@gmail.com. I repacked PARCEL 9 with "sham" cocaine in anticipation of a controlled delivery to 3210A S. 12th Street, Milwaukee, Wisconsin. On January 16, 2024, I obtained a state warrant to search this residence.

Search of 3210A S. 12th Street and post-*Miranda* interviews of
Nolasco-Brito and Del Valle-Martinez

31. On January 17, 2024, at about 10:45 a.m., an undercover Postal Inspector delivered the "sham" PARCEL 9 to 3210A S. 12th Street, Milwaukee, Wisconsin. At about 11:15 a.m., Nolasco-Brito emerged from the residence, retrieved the "sham" PARCEL 9, and returned inside the residence with the parcel. At about 11:20 a.m., North Central HIDTA officers executed the state warrant at the residence. Upon entering the residence, the officers located Nolasco-Brito and her two minor children. In the living room, the officers found a money counter, and in the dining room, they found a large scale, a vacuum sealer, a gray iPhone, and the "sham" PARCEL 9.

32. In a post-*Miranda* interview, Nolasco-Brito said that she lived at 3210A S. 12th Street with her fiancé Joseph Del Valle-Martinez and their two minor children. In reference to PARCEL 9, Nolasco-Brito said Del Valle-Martinez told her that the package had been delivered to their residence and that it was for his cousin. She said that she sent a picture of the package to Del Valle-Martinez after she retrieved it from the porch. She recalled receiving packages sent to her residence and sending pictures of them to Del Valle-Martinez on five (5) prior occasions as well. Nolasco-Brito said she never opened any packages, and Del Valle-Martinez never told her what the packages contained. She said she did not know what Del Valle-Martinez did with the packages once he retrieved them from her. Del-Nolasco-Brito also said she did not know anyone

14

named Jose Ortiz, Vanessa Ortiz, Kevin Ortiz or Maria Ortiz (i.e., the names indicated on the suspicious parcels linked to 3210A S. 12th Street).

33.     Del Valle-Martinez agreed to speak with investigators too.  In a post-*Miranda* interview, Del Valle-Martinez said that he lived at 3210A S. 12th Street with his fiancé Nolasco-Brito and their two minor children.  He identified his cell number as 787-955-8481.  When confronted about several packages believed to contain cocaine that were mailed to his residence, Del Valle-Martinez asked that the interview not be audio recorded.  After the recording device was turned off, Del Valle-Martinez said he was expecting a package that day (January 17, 2024) from Damian DEL VALLE-RIVERA (his cousin), who called him the previous day to alert him that a package was coming. Del Valle-Martinez explained that DEL VALLE-RIVERA routinely tracks mailed packages in order to notify Del Valle-Martinez when to expect delivery at his Milwaukee residence.  Although Del Valle-Martinez claimed not to know the contents of PARCEL 9, he admitted he knew it contained contraband.  According to Del Valle-Martinez, DEL VALLE-RIVERA had mailed him six or seven packages from Puerto Rico that contained illegal drugs.  Del Valle-Martinez said once he receives a package, he notifies DEL VALLE-RIVERA, who travels to Del Valle-Martinez's Milwaukee residence to retrieve the package and then drives it to Omaha, Nebraska.  Del Valle-Martinez said he once partially opened a package and observed bed sheets inside.  He said he did not further explore the contents of the package.  Del Valle-Martinez claimed he received nothing in exchange for receiving packages on behalf of DEL VALLE-RIVERA.  Del Valle-Martinez failed to mention that on July 9, 2023, he and DEL VALLE-RIVERA were stopped near Iowa City, Iowa and state law-enforcement officers seized over $45,000 in U.S. currency from their vehicle (discussed *infra*).  I seized Del Valle-Martinez's iPhone after Del Valle-Martinez gave law enforcement consent to search it.

15

34.     On February 5, 2024, I received surveillance footage from the Sabana Seca, Puerto Rico Post Office.  The surveillance footage showed a white Mitsubishi Outlander with tinted windows arrive at the facility on January 12, 2024 at 11:26 a.m.  The Mitsubishi appeared to be the same vehicle driven by the bearded man who was believed to have mailed PARCEL 9 at the Dorado Post Office the previous day.  A different bearded male, however, exited the Mitsubishi at the Sabana Seca Post Office and is believed to have mailed PARCEL 10, which was a 6 lbs. 12 oz. package postmarked on January 12, 2024 in Sabana Seca, Puerto Rico at 11:46 a.m. Surveillance footage shows the bearded male sending a parcel at the Sabana Seca Post Office at approximately the same time indicated on the postmark for PARCEL 10.  According to USPS records, PARCEL 10 was delivered to 3455 S. 3rd Street, Milwaukee, Wisconsin 53207 on January 13, 2024.

35.     On February 20, 2024, Postal Inspector J. Ortiz-Santiago searched the name "Damian Joel Del Valle-Rivera" and identified the Facebook profile for "Rivera Joel."  The Facebook images for "Rivera Joel" resembled the person believed to have mailed PARCELS 1, 2, 4, 7 and 9.  Furthermore, "Rivera Joel" posted an October 9, 2022 image of himself with a male who resembled the person believed to have mailed PARCEL 10. The person in the image with "Rivera Joel" identifies as "Dylan Emil Rodriguez" on Facebook.  Through a law-enforcement database, Inspector Ortiz-Santiago was able to identify a Dylan Emil Rodriguez-Burgos (DOB: XX/XX/2000) from Vega Baja, Puerto Rico.

Iowa City vehicle stop and seizure of over $45,000 cash

36.     On July 9, 2023, at about 11:20 a.m., Iowa Department of Natural Resources Park Ranger (FNU) Dykstra spotted a Chrysler Pacifica, bearing California plates, on the northbound

16

shoulder of Highway 1 near Iowa City, Iowa. Ranger Dykstra was in a marked vehicle. As Ranger Dykstra approached, the Chrysler pulled onto the roadway. Agent Dykstra followed the Chrysler, which reached high speeds (approximately 80 mph [70 mph limit]), weaved, and crossed the center line multiple times. The Chrysler soon returned to the shoulder of Highway 1 near the 280th Street intersection where it came to a stop. As the Chrysler was pulling over, Ranger Dykstra activated his emergency lights to conduct a traffic stop. Ranger Dykstra identified DEL VALLE-RIVERA as the driver and Del Valle-Martinez as a passenger in the back seat. While standing next to the driver's side window, Ranger Dykstra sensed a strong odor of marijuana emanating from the vehicle's interior. Ranger Dykstra subsequently directed DEL VALLE-RIVERA and Del Valle-Martinez to exit the Chrysler so that he could conduct a "probable cause" search of the vehicle. Upon searching the Chrysler, the ranger found a small amount of marijuana in the glove box, a money counting machine inside a backpack located in the rear passenger compartment, and over $45,000 cash inside a bag located behind the center console. DEL VALLE-RIVERA's passport was in the same bag as the cash. DEL VALLE-RIVERA told the ranger that the cash was intended for a vacation. When DEL VALLE-RIVERA subsequently spoke with another ranger, he said he intended to use the cash to purchase a car, which he ultimately did not purchase. Iowa State Patrol troopers arrived to take custody of the cash. Ranger Dykstra arrested DEL VALLE-RIVERA for unlawful possession of a controlled substance. The ranger also seized DEL VALLE-RIVERA's cellphone incident to arrest.

### "Elbozz14" iCloud account links DEL VALLE-RIVERA to cocaine trafficking and parcels

*DEL VALLE-RIVERA apparent user of "Elbozz14" iCloud account*

37.     On February 5, 2024, I obtained a warrant to search the Apple iCloud account associated with elbozz14@icloud.com. On February 15, 2024, Apple Inc. provided account

information responsive to the warrant. The account information included evidence that DEL VALLE-RIVERA's email address was elbozz14@icloud.com. For instance, the iCloud account included an email from Booking.com addressed to "Damian Del Valle," having email address elbozz14@icloud.com and phone number 787-619-6037, referencing his stay at the Best Western Plus Hotel (Milwaukee Airport) between August 11 and 12, 2023. The iCloud account also included a screenshot indicating that the elbozz14@icloud.com email address belonged to "Damien Joel Del Valle Rivera" whose phone number was 787-619-6037. Additionally, the iCloud account included images of various photo IDs belonging to DEL VALLE-RIVERA, including his Puerto Rican driver's license and a "medical marijuana" identification.

DEL VALLE-RIVERA linked to PARCELS 1-9 through "Elbozz14" iCloud account

38. The iCloud account included information demonstrably linking the user of the elbozz14@icloud.com iCloud account (presumably DEL VALLE-RIVERA) with PARCELS 1 through 9. The iCloud account included an image of PARCEL 1, an image of the USPS receipt for PARCEL 1, and a screenshot of the USPS's online tracking for PARCEL 1.

39. The iCloud account included an image of PARCEL 2, an image of the USPS receipt for PARCEL 2, and a screenshot of the USPS's online tracking for PARCEL 2.

40. The iCloud account included an image of PARCEL 3, and a screenshot of the USPS's online tracking for PARCEL 3.

41. The iCloud account included a screenshot of the USPS's online tracking for PARCEL 4, and an image of suspected cocaine kilogram bricks bearing the same stamp as the stamp appearing on the cocaine kilogram brick found inside PARCEL 4.

42. The iCloud account included an image of PARCEL 5's shipping label, and an image of the USPS receipt for PARCEL 5.

18

43.     The iCloud account included images of the USPS receipts for PARCEL 6 and 7, and an image of a suspected cocaine kilogram brick bearing the same stamp as the stamp appearing on the cocaine kilogram brick found inside PARCEL 8.

44.     The iCloud account included an image of the USPS receipt for PARCEL 9, and a screenshot of the USPS's online tracking for PARCEL 9.

45.     The iCloud account included an image of a white Acura MDX, bearing Puerto Rico plates numbered JJO 514, which was the same vehicle DEL VALLE-RIVERA drove to the San Juan and Saba Seca post offices to mail PARCELS 1 and 7, respectively; and from which a female disembarked at the Dorado and Saba Seca post offices to mail PARCELS 5 and 6, respectively. The iCloud account also included an image of a white Mitsubishi Outlander, which resembled the vehicle DEL VALLE-RIVERA drove to the Saba Seca post office to deliver PARCEL 9, and which Dylan Emil Rodriguez-Burgos drove to the Dorado post office to mail PARCEL 10.

46.     The iCloud account included an image of DEL VALLE-RIVERA standing in the alley behind Del Valle-Martinez's home, i.e., 3210A S. 12th Street, Milwaukee, Wisconsin – the same residence that was the intended destination for PARCELS 1, 2, 3, 8 and 9.

*The "Elbozz44" iCloud account included information that DEL VALLE-RIVERA has been trafficking significant quantities of cocaine in recent years*

47.     The iCloud account was replete with images of suspected kilogram bricks of cocaine. Several of these "cocaine" images included distinctive features of DEL VALLE-RIVERA's home in the background, thus suggesting DEL VALLE-RIVERA would keep the contraband at his home before mailing it. For example, an image of a suspected kilogram brick of cocaine stamped "RZ 24" has a glass table, a red woven placemat, and a white dining chair visible in the background. In another image, DEL VALLE-RIVERA is seen sitting at a glass table on a white dining chair with the same red woven placemat before him. Several other images of

19

suspected cocaine bricks also included the glass table and/or white dining chair in the background. Of note, one suspected cocaine brick is labeled "VAllE," which is possibly a derivation of DEL VALLE-RIVERA's surname.

48. The iCloud account included images of DEL VALLE-RIVERA handling significant amounts of cash, which are probably, all things considered, drug proceeds. For instance, a video depicts a bag filled with bundles of U.S. currency with the glass table and distinctive red placemat in the background. The iCloud account also includes images of DEL VALLE-RIVERA and possibly Rodriguez-Burgos flaunting large stacks of U.S. currency while posing with a U.S. Postal vehicle on W. Grand Avenue in Chicago, Illinois – an apparent nod to DEL VALLE-RIVERA's exploitation of the USPS to smuggle kilogram-quantities of cocaine into the continental United States.

49. The iCloud account included images of DEL VALLE-RIVERA wearing distinctive jewelry and accessories, such as a ring bearing his name and a gold belt buckle. The ring and belt buckle are significant because they were visible in recovered images that also prominently displayed semi-automatic pistols, suggesting DEL VALLE-RIVERA possessed these notorious "tools" of the drug trade as well. The iCloud account also included video of DEL VALLE-RIVERA firing a semi-automatic pistol at a firing range and numerous images of various firearms, including semi-automatic pistols and assault-styled rifles.

DEL VALLE-RIVERA's continued use of the U.S. Mail to traffic cocaine

50. Based on the foregoing, on April 16, 2024, a grand jury returned the indictment in the instant case. Following the indictment's return, I learned, based on USPS records, that DEL VALLE-RIVERA had relocated to the state of Washington and was possibly residing at 12307 NE

150th Court, Kirkland, Washington 98034. On May 15, 2024, investigators observed DEL VALLE-RIVERA outside his suspected Kirkland, Washington residence.

51.     On May 24, 2024, while reviewing USPS records, I identified a suspicious parcel sent from Puerto Rico and destined for the Kirkland, Washington residence. PARCEL 11 was 4 lbs., 10 oz. and was postmarked on May 22, 2024 in Toa Baja, Puerto Rico at 11:47 a.m. The handwritten shipping label indicated it was from "Ernesto Juan Cobrado Calle Luis Munoz Rivera #31 Toa Baja P.R. 00951" and addressed to "Maria Ortiz 12307 NE 150th Ct Kirkland, WA 98034 Estado Unidos" (the same name used as the intended recipient of PARCELS 1, 2, 3, 8 and 9, and as the sender of PARCEL 5). The CLEAR database indicated no one named "Ernesto Juan Cobrado" resided at the sender's address while no one named "Maria Ortiz" resided at the recipient's address. I had PARCEL 11 redirected to the USPIS office in Milwaukee, Wisconsin. On May 31, 2024, I received PARCEL 11 in Milwaukee. After a narcotics-detecting canine alerted to PARCEL 11, I obtained a warrant to search its contents. Upon executing the warrant, case agents found approximately 30 grams of a substance that field-tested positive for cocaine.

Arrest of DEL VALLE-RIVERA

52.     On May 28, 2024, DEL VALLE-RIVERA was arrested in the Western District of Washington (WDWA) based on the indictment returned in this case. (EDWI case no. 24-CR-80-PP).  Incident to DEL VALLE-RIVERA's arrest, officers determined he was in possession of a green Apple iPhone smartphone with an Apple logo on the back, in a black Otterbox case ("**Device A**"), and a purple Apple iPhone smartphone with an Apple logo on the back, in a black Otterbox case ("**Device B**").

53.     Case agents are aware, based on their training and experience, of numerous sophisticated techniques used by drug traffickers in furtherance of their drug trafficking activities.

21

In this investigation, DEL VALLE-RIVERA utilized several of these techniques including the use of multiple cellular phones, shipping USPS parcels to multiple different addresses in different states, shipping cocaine laden parcels addressed to a fictitious person, and the suspected use of nominee names on cellular phone accounts to avoid law enforcement identification of the user of the devices, and the use of the USPS to transport narcotics. Therefore, case agents believes that DEL VALLE-RIVERA is a sophisticated drug trafficker who participated in the shipment of several USPS parcels from Puerto Rico to Wisconsin and other destinations, which contained distribution quantities of cocaine and then was suspected of traveling to Milwaukee to oversee the distribution of narcotics to drug traffickers in the Eastern District of Wisconsin and elsewhere.

## **CONCLUSION**

54.     Case agents believe DEL VALLE-RIVERA used his cell phones to facilitate drug trafficking and evidence of drug trafficking may likely be stored and recorded on **Devices A** and **B**.

55.     From the previously mentioned Apple account search warrant on DEL VALLE-RIVERAs iCloud, he is known to historically store data related to his cocaine distribution network, shipping methods, photographs, and communications within his Apple account. When DEL VALLE-RIVERA was arrested, he was found to be in possession of two Apple iPhones (**Devices A** and **B**), which are suspected of have Apple accounts.

56.     Through my training, experience, and discussions with other experienced law enforcement officers, I am familiar with the ways in which drug traffickers and money launderers conduct their unlawful trade, including their methods of distribution, their use of communication devices, their use of coded communications to conduct their transactions, the employment of

22

counter surveillance, their use of false or fictitious identities, and their use of various forms of electronic devices to store and/or conceal illegal activity.

57. Based upon my training and experience, I know that individuals involved in drug trafficking and money laundering frequently use cellular telephones to maintain contact and arrange transactions with their sources and customers of and co-conspirators in the distribution of controlled substances and money laundering. I have also found it very common for crime suspects to use their cellular telephones to communicate aurally or via electronic message in "text" format with individuals whom they purchase, trade, or otherwise negotiate to obtain illegal drugs.

58. Based on my training and experience, I am aware individuals involved in trafficking controlled substances and money laundering often possess multiple cellular devices to compartmentalize their illegal activity and to avoid law enforcement detection.

59. Based upon my training and experience, I believe it is common for crime suspects who possess illegal controlled substances to often take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal controlled substances and proceeds of drug trafficking. Furthermore, affiant believes it is common for these photographs and visual depictions to be kept and maintained on their cellular devices.

60. Based upon the facts described above, to include (1) my knowledge of and experience confirming the prolific use of electronic devices to facilitate the possession and trafficking of controlled substances and money laundering; (2) Damian DEL VALLE-RIVERA was arrested in connection to multiple USPS parcels containing kilogram quantities of suspected cocaine; and (3) two cellular phones were recovered from DEL VALLE-RIVERA's person, there is probable cause to believe that a search of the information contained within the above described

23

Devices will produce evidence of a crime, namely evidence related to the possession and trafficking of controlled substances.

61.     **Devices A** and **B** were seized by the USPIS during the arrest of Damian DEL VALLE-RIVERA on May 28, 2024.

62.     **Devices A** and **B** are currently in storage at the USPIS Milwaukee office, 345 W. Saint Paul Avenue, Milwaukee, Wisconsin.  In my training and experience, I know that **Devices A** and **B** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when **Devices A** and **B** first came into the possession of USPIS.

63.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **Devices A** and **B** described in Attachment A to seek the items described in Attachment B.

## TECHNICAL TERMS

64.     Based on my training and experience, I use the following technical terms to convey the following meanings:

> a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless

24

telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing

25

computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

    f.   Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

    g.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    h.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

    65.    Based on my training, experience, and research, I know that **Devices A** and **B** have the capabilities that allow them to serve as a wireless telephone, digital camera, portable media

player, GPS navigation device, and PDA, and all have the ability to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

66.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

67.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **Devices A** and **B** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on **Devices A** and **B** because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore,

27

contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

68.    *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **Devices A** and **B** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of **Devices A** and **B** to human inspection in order to determine whether it is evidence described by the warrant.

69.    *Manner of execution.*  Because this warrant seeks only permission to examine the device once in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**ATTACHMENT A**

**Property to Be Searched**

1.      The property to be searched is described as follows:

      a.   A green Apple iPhone smartphone with an Apple logo on the back, in a black Otterbox case, hereinafter referred to as "**Device A;**"

      b.   A purple Apple iPhone smartphone with an Apple logo on the back, in a black Otterbox case, hereinafter referred to as "**Device B;**"

**Devices A** and **B**, collectively the "**Devices**," are currently located at 345 W. Saint Paul Avenue, Milwaukee, Wisconsin.  This warrant authorizes the forensic examination of the **Devices** for the purpose of identifying the electronically stored information described in Attachment B.

29

<u>**ATTACHMENT B**</u>

1.      All records on the **Devices** described in Attachment A that relate to violations of 21

U.S.C. §§ 846, 843(b), and 841(a)(1), and involve Damian DEL VALLE-RIVERA, including, but

not limited to:

       a.   any documents and communication related to the Subject Offenses;

       b.   lists of contacts and related identifying information;

       c.   any information related to criminal activity and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

       d.   any information recording schedule or travel;

       e.   all bank records, checks, credit card bills, account information, and other financial records;

       f.   Photographs and/or videos depicting evidence of the crime;

       g.   Any evidence related to either the ownership, purchase, or possession of items used in the Subject Offenses;

       h.   Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses

2.      Evidence of user attribution showing who used or owned the **Devices** at the time

the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of

evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store

data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored

information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

instrumentalities described in this warrant.  The review of this electronic data may be conducted

1

by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the USPIS may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2